THE MARY BUHNE.

(Circuit Court of Appeals, Ninth Circuit. October 6, 1902.)

No. 760.

1. COLLISION—SAILING VESSELS MEETING—UNWARRANTED CHANGE OF COURSE.
    One of two sailing vessels approaching each other from opposite directions in the night was sailing free on the starboard tack, while the other was closehauled on the port tack. So long as such courses were maintained, there was no danger of collision, but when a short distance apart the vessel running free twice changed her course, the last time taking a course in which she was closehauled on the starboard tack, and making a collision inevitable if both maintained their courses. *Held*, that in such situation the other vessel, which had previously been privileged and required to maintain her course, became the burdened vessel, and was not in fault for changing her course, although a collision resulted by reason of both changing at the same time; and that the one making the first changes, bringing about the dangerous situation without necessity, was solely in fault.

Appeal from the District Court of the United States for the Northern District of California.

For opinion below, see (D. C.) 95 Fed. 1002.

Nathan H. Frank, for appellants.

H. W. Hutton, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. On June 28, 1896, the schooner Jennie Thelin, laden with a cargo of lumber, left Eureka, Cal., bound for San Francisco, and had proceeded about 18 miles on her way, when she came into collision with the Mary Buhne at about 12:30 o'clock a. m. on June 29th. At midnight Capt. Hansen, the master of the Jennie Thelin, and a man named Jacobsen, went on watch. There was moonlight, and it was clear. The sea was smooth, with the wind southeast. The master observed that his vessel was on the port tack, running as close to the wind as she could, and making four or five miles an hour, and that her side lights were burning brightly. About 15 minutes before the collision, both Hansen and Jacobsen saw the green light of the Mary Buhne about two points on the starboard bow, and about two miles away. The evidence shows that Hansen kept his eye on the light, and that soon the Mary Buhne changed her course, and showed her two side lights to the Jennie Thelin in about the same position on the bow of the latter, and that shortly afterward the Mary Buhne again changed her course, leaving only her red light visible. According to the evidence of Hansen, the Mary Buhne, when first observed, was headed N. N. E., and was running free on the starboard tack, with maybe a couple of points in the sails free; but when she showed her red light only she was running close to the wind on the same tack. The master of the Jennie Thelin, seeing that a collision was inevitable, put his helm hard aport, but at about the same time the Mary Buhne, also to avoid the collision, put her helm hard astarboard, and ran into the Jennie Thelin on the port forward quarter. It was held by the district court that the Mary Buhne was at fault, and was responsible for the collision, and that the Jennie Thelin was free from blame. The appellants challenge the sufficiency of the evidence to sustain that finding. They say that, conceding it to be true, as shown by the evidence of the appellees, that shortly prior to the collision the vessels were in the three positions indicated, it was the duty of the Jennie Thelin at all times to hold her course, and that of the Mary Buhne to keep out of her way. They argue that in the first position, when the master of the Jennie Thelin first saw the Mary Buhne, there was no danger of a collision, and that, as the former was sailing close to the wind, and the latter running free, the former had the right of way; that in the second position, when both lights of the Mary Buhne were visible from the Jennie Thelin, the Mary Buhne was still running free before the wind, and was subject to the same law to keep out of the way; and that in the third position, when a collision became inevitable, if both vessels held their courses, it was

still the duty of the Jennie Thelin to hold her course, and that of the Mary Buhne to avoid a collision, since she was then, as before, still running free before the wind; and that she complied with the law by putting her helm hard astarboard, and would have avoided the collision, but for the act of the Jennie Thelin in departing from her course and putting her helm aport at the same time. The evidence in the case is, upon some points, conflicting. It is clear that at the first position of the vessels there was no danger of collision, and that the Jennie Thelin had the right of way, being closehauled, and that it was the duty of the Mary Buhne to keep out of her way. The evidence fairly establishes the fact, and the district court so found, that the Mary Buhne twice thereafter changed her course before the final change, which she made to avoid the collision. After the first change, it is not disputed that the Mary Buhne was still sailing free before the wind, and was under obligation to keep out of the way of the Jennie Thelin; but the court found that in the courses the vessels were then sailing there was no danger of a collision. The chief question in the case, and that upon which the responsibility of the Mary Buhne for the loss and damage depends, is whether or not, in her third position, she was sailing free before the wind. The appellant contends that she was then running free as she was within six points of the wind. To support this contention, a nautical dictionary is cited to the effect that the keel of a square rigged vessel when closehauled "actually makes an angle of six points with the line of the wind, but cutters, luggers, and other fore and aft rigged vessels will sail much nearer" (Wagner's Marine Dictionary, 91); and reference is made to the language of Mr. Justice Clifford in Crowel v. Radama, 6 Fed. Cas. 908 (No. 3,442), that "a schooner running six points off" the wind was running free. But as against these definitions is the direct evidence of the master of the Jennie Thelin that in the third position both vessels were by the wind, and we cannot say that the district court erred in crediting it. It is contended that this evidence is disputed by that of the master of the Mary Buhne. He was not on deck just prior to or at the time of the collision, but he came on deck immediately afterward. He testified that the position of the sails on the Mary Buhne was such as to indicate, in his opinion, that she was running free at the time of the collision, for the reason that her sails could not have been changed from a condition of being closehauled to that in which he found them in less than 10 minutes. The trial court characterized this expression of opinion as the result of a hasty observation made while the vessels were still in collision, and said that it was not sufficient, in his judgment, to overthrow the positive evidence of the two witnesses who testified to the changes of the course of the Mary Buhne. We find in the record no reason to question the correctness of that conclusion. If in the third position the Mary Buhne was closehauled on the starboard tack, she had the right of way, since a vessel closehauled on the port tack is obliged to keep out of the way of a vessel closehauled on the starboard tack; and, having the right of way, it was her duty to maintain her position, and equally the duty of the Jennie Thelin to avoid a collision, which she attempted to do by putting her helm hard aport. The Mary Buhne was re-

sponsible for the condition of danger in which the vessels were in the third position. No reason is shown in the evidence why she should not have held the course she had in the second position until she had passed the Jennie Thelin. Having made the change which brought the two vessels in converging lines, she failed to follow the rule which applied to that situation. The mate and the boy who were on watch on the Mary Buhne were not produced as witnesses. The appellants made a showing of diligence in the effort to obtain their testimony, and the trial court indulged no presumption that such evidence, if given, would have been adverse to their contention. It is unimportant that the master of the Jennie Thelin was not advised of the statute governing the movement of vessels in the position in which these vessels were just prior to the collision. His course in putting his helm aport was proper, although his reason for so doing may have been erroneous.

The decree of the district court will be affirmed.